## JOSEPHINE BUKOWSKI v. TRAVELERS INSURANCE COMPANY OF HARTFORD.[1]

December 20, 1935.

No. 30,533.

*E. V. Molle,* for relator.

I. M. OLSEN, JUSTICE.

*Certiorari* to review an order of the district court granting an extension of the time within which to redeem from a real estate mortgage foreclosure sale. The proceeding was brought in the

[1]Reported in 264 N. W. 217.

district court by summons and complaint, to which the defendant insurance company made answer.

The land in question is a 200-acre tract of farm land in Lincoln county in this state. The plaintiff and her six children are the owners of the land, having inherited the same from the husband and father, who had died prior to 1926. The children, as far as appears, are all of age, and only the plaintiff and one daughter have been occupying the land. The mortgage in question was given by the plaintiff and the children on October 28, 1926, for the principal sum of $6,500. It was foreclosed in 1934. The foreclosure sale was had on March 26 of that year. The time for redemption would expire on March 26, 1935. The summons and complaint in the proceeding were served on March 19, 1935, and the matter came on for hearing before the court on April 6, 1935. The court, after the hearing, made an order extending the time for redemption until March 1, 1936, and the defendant brings the matter here for review on *certiorari*.

There were two questions presented to the trial court: First, whether the court had jurisdiction to hear and determine the matter after the time for redemption from the mortgage sale had expired; and, second, whether the plaintiff had shown any equitable or other right for the relief asked.

The moratorium act of 1935, c. 47, was passed on March 15, 1935, and under that act the application was in time and the court had jurisdiction.

On the second question, we are unable to agree with the court that plaintiff was entitled to any relief upon the facts here shown. At the time of the foreclosure sale there had been material default under the mortgage ever since 1930. There was due unpaid interest amounting to $1,174.32. There was default in payment of taxes amounting to $1,377.69, which taxes the defendant mortgagee had paid. There were costs on the foreclosure amounting to $104.50. The mortgagee bid in the land for the total amount due and the costs, amounting in the aggregate to $9,156.51. The application for extension of time was presented to the court within the 30 days provided by L. 1935, c. 47, § 4. No effort had been made by the

plaintiff, or anyone, to refinance the mortgage during the redemption year. Plaintiff had committed waste on the premises by removing therefrom some small buildings and some standing timber to an adjoining tract of land owned by plaintiff and her children. The reasonable inference is that plaintiff had concluded to abandon the mortgaged land. At the time of the hearing in April, 1935, the interest since the foreclosure and taxes would result in further charges against the land, which, added to the amount of the foreclosure, would aggregate approximately $10,000. The evidence as to the value of the land, on plaintiff's part, is her own testimony, where, in answer to a leading question, she placed the value at about $12,000. The question was: "According to your petition you say that the land is worth about $12,000. Is that about right? A. Yes." On cross-examination she was asked: "Q. Do you know anything about what lands are worth in your part of the country at this time, what they are offering them for sale for? A. I don't know. Q. At $12,000, that would make a value of $60 an acre for this farm. Is there a farm around the country there that you know of that you could sell for $60 an acre? A. No."

On the part of the defendant there is the evidence of two competent witnesses, who had knowledge of the value of farm lands and of the value of this particular land and placed the value at about $7,800.

There is no showing that there is any prospect or hope that refinancing or redemption can be made by this plaintiff. The court in its order provided that the plaintiff should pay three dollars an acre for the pasture land on the premises for the period from March 1, 1935, to March 1, 1936, and that she should deliver to the defendant two-fifths of all crops, including corn, raised on the land during 1935, with the provision that defendant was to pay two-fifths of the threshing bill for threshing the grain and two-fifths of the bill for shelling the corn. The pasture land at three dollars an acre is out of the case because plaintiff testified that there was no pasture on the land. At the time of the hearing, which was a few days before crops should be sown on the land, the only preparation for any crop for 1935 was a piece of plowing of about 30

acres. The plaintiff had no seed grain and no means to purchase seed unless she obtained a seed grain loan. The buildings on the place were deteriorating, and the land was not being properly tilled. In that situation it is clear that the defendant, under the most favorable circumstances, would receive practically nothing either for the rent or for any share of a crop on this land for the year 1935. The extension of the redemption period, in the situation here shown, could result only in adding further charges and encumbrances on the land in the way of taxes and interest, and in material loss to the defendant. There is no equity shown which would authorize the court to grant the extension. The plaintiff has filed no brief in the matter before this court and made no oral argument.

The order of the court granting extension of time to redeem is reversed.

HILTON, JUSTICE (dissenting).

Considering as I do that the learned trial court acted within the bounds of sound discretion in granting the relief prayed for, I am forced to dissent. In addition to the facts stated in the majority opinion, there are others that should be considered. Plaintiff is the owner of 67 acres of unencumbered land adjoining the premises in question. She has sufficient machinery, including a tractor, to farm all her land. She has four horses and eight head of cattle. A young man living on the farm was aiding in its operation. There is no evidence whatever that the land was not properly tilled. Thirty acres of fall plowing had been done and the farm cleared of thistles in preparation for the 1935 season. No seeding had been done up until the time of the hearing (April 6), but, in the absence of evidence, it should not be assumed that it was at that time too late to put in a crop. Plaintiff testified that she could get a seed grain loan.

All of plaintiff's obligations in the way of payment of interest on the mortgage and taxes were fulfilled from the date of the mortgage until the depression. Since 1930 there have been four successive crop failures in that part of the state. One of defendant's witnesses testified that the crops were completely hailed out in

1930; that the prices were low and inadequate in 1932; that there were total crop failures in 1933 and 1934.

Plaintiff did commit acts of waste. However, they caused no loss to the defendant. The trial court stated that the cutting of the dead trees, the only ones cut, had benefited the land in a way. This wood was piled in the location where like wood had been piled for many years before. The order granting the extension was made conditional on plaintiff's returning the wood and the four small buildings, which had but little value, to the mortgaged premises. The buildings were of frame construction. Two of them, 12 x 16 and 10 x 12, were used as chicken houses in the summertime. One was a smoke house, 6 x 6, the other an outhouse, 4 x 5.

Plaintiff was unlearned. She even was illiterate, as is evidenced in part by the fact that she signed her name only with a mark. She apparently thought that she had a right to cut the wood and move it to her other property as had been the practice for many years. No inference of an intention to abandon the premises should be drawn therefrom. A contrary intent is indicated by the application for an extension of the time within which to redeem.

In her testimony plaintiff stated that there was no pasture land on the mortgaged premises, but one of defendant's witnesses testified that there was, and the trial court so found. The testimony of plaintiff indicates a failure on her part to understand questions that were asked her.

On direct examination plaintiff placed the value of the farm at $12,000. However, when asked on cross-examination if she knew of a farm around the country which she could sell for $60 an acre, she answered "no." The fact that she knew of no farm that she could sell for $60 an acre should not destroy the weight of her testimony as to the value of her own farm. Its weight was for the trial court. This court has held repeatedly that an owner of property, either real or personal, is competent to testify as to the value of his own property. Carl Lindquist & Carlson, Inc. v. Johanson, 182 Minn. 529, 235 N. W. 267; Hoffman v. Piper, 181 Minn. 603, 233 N. W. 313; 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 3322. The two witnesses for defendant each placed the

value of the farm at exactly $7,800. One of them owned a farm quite some distance from that of plaintiff's. He had had no experience in the real estate business. Certainly he was in no better position than was plaintiff to testify as to the value of plaintiff's farm. There had been no activity in the buying and selling of farm lands in that vicinity recently. Thus the testimony of the other witness for defendant was conjectural.

In addition to the statements from the trial court's order appearing in the majority opinion, that court expressly specified that: "The plaintiff shall till and farm said premises in a good husband-like manner and shall allow no waste to be committed on said premises during said period of redemption." Defendant would receive, under the order, just as large a return from the land as it would receive as owner. The mortgage moratorium act is plainly remedial and should be given a fair construction in aid of its purpose. Anderson v. Hill, 191 Minn. 414, 254 N. W. 585.

DEVANEY, CHIEF JUSTICE (dissenting).

I concur in the dissent.